| | | |
|---|---|---|
| MICHAEL J. GILLIS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | JURY DEMANDED |
| | ) | |
| THE CITY OF KINGSPORT, TENNESSEE; | ) | |
| KINGSPORT POLICE OFFICER JOSEPH | ) | |
| MALONE, *individually and in his official* | ) | |
| *capacity*; KINGSPORT POLICE OFFICER | ) | |
| NICKOLAUS RAMBO, *individually and in his* | ) | |
| *official capacity*; KINGSPORT POLICE | ) | |
| OFFICER TRAVIS BATES, *individually and in* | ) | |
| *his official capacity*; JOHN DOE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

Plaintiff, Michael J. Gillis, through counsel, and for cause of action against these

Defendants, respectfully states as follows:

### INTRODUCTION

This is a civil rights, personal injury, and common law tort action arising from the acts

and omissions, policies, practices, and culture of the City of Kingsport, Tennessee; the

Kingsport Police Department; Kingsport Police Officer Joseph Malone; Kingsport Police

Officer Nickolaus Rambo; Kingsport Police Officer Travis Bates; and other as yet

unidentified Kingsport police officers who participated in the unlawful seizure and brutal treatment of Michael J. Gillis on August 20, 2020 (Defendants).

Mr. Gillis is a 50-year-old resident of Kingsport, Tennessee, who is the director of Hunger First, a 501(c)(3) non-profit organization. The mission of Hunger First is to relieve the hardships of homelessness for the growing homeless population of Kingsport. Toward this end, Mr. Gillis and Hunger First have leased a commercially-zoned building located at 1040 East Center Street, Kingsport, Tennessee 37660. At this location, Hunger First provides a "clothes closet" where homeless persons can acquire season-appropriate clothing, a food pantry, and a 24-hour warming/cooling station where homeless people can rest comfortably for a while. Veterans and persons suffering with mental illness are also those who benefit from the services provided by Hunger First.

As the homeless population of Kingsport has grown dramatically over the last several years, the City of Kingsport has implemented policies and allowed the development of customs intended to keep homeless persons out of the downtown business district. The combination of an increasing homeless population and these policies and customs have led to increased police encounters with homeless persons and, as a result, increased police interaction with the Hunger First facility on East Center Street and with Mr. Gillis as director of Hunger First. These increased police interactions culminated in the false arrest of Mr. Gillis and brutal treatment by police officers. When Mr. Gillis was arrested, officers slammed him to the pavement face-first

and one officer placed his knee on Mr. Gillis' neck in the same manner that notoriously caused the death of George Floyd only months earlier.

Mr. Gillis' claims under 42 U.S.C. § 1983 arise, among other things, from the Defendants' violation of Mr. Gillis' clearly established rights guaranteed to him under the Fourth Amendment to the United States Constitution, including unlawful seizure and excessive force.

## I.    PARTIES

1.    Plaintiff, Michael J. Gillis, is an adult citizen of the United States and the State of Tennessee. Mr. Gillis resides at 115 Hemlock Road, Kingsport, Tennessee 37663.

2.    The Plaintiff sues the Defendants for all damages recoverable under state and federal law.

3.    Defendant City of Kingsport, Tennessee, is a governmental entity created under the laws of the State of Tennessee. Among its other functions, the Defendant operates and maintains a law enforcement agency, Kingsport Police Department. Defendant City of Kingsport is responsible for ensuring the establishment and enforcement of rules, regulations, policies, practices, procedures, and customs for the Kingsport Police Department. The City of Kingsport does not have immunity for violating any person's civil rights. The city of Kingsport is liable for its own conduct and the acts and omissions of its elected officials, employees, agents, and contractors, including the individually named police officer Defendants. By virtue of the fact that they acted in conformity with the policies, practices, and customs of the City of Kingsport which

resulted in the damages claimed in this suit. Defendant City of Kingsport was at all times material to this suit under a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Kingsport and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitution and the laws of the United States.

4.      Defendant Kingsport Police Officer Joseph Malone ("Officer Malone") is a member of the Kingsport Police Department and was at all times relevant to this suit, and upon information and belief, is an adult resident of Sullivan County, Tennessee.

5.      Defendant Kingsport Police Officer Nickolaus Rambo ("Officer Rambo") is a member of the Kingsport Police Department and was at all times relevant to this suit, and upon information and belief, is an adult resident of Sullivan County, Tennessee.

6.      Defendant Kingsport Police Officer Travis Bates ("Officer Bates") is a member of the Kingsport Police Department and was at all times relevant to this suit, and upon information and belief, is an adult resident of Sullivan County, Tennessee.

7.      Defendants John Doe Kingsport Police Officers were at all times relevant to this suit, members of the Kingsport Police Department who participated in the arrest of Mr. Gillis on or about August 20, 2020.

## II.     JURISDICTION AND VENUE

8.      This cause of action arises out of a series of events, all of which occurred in Sullivan County, Tennessee.

9.      Venue lies with this court pursuant to 28 U.S.C. § 1391, as all the acts or omissions which give rise to this cause of action occurred within this district, and based

Case 2:21-cv-00125-DCLC-CRW   Document 11   Filed 08/20/21   Page 4 of 21   PageID #: 37

on information and belief, all of the Defendants are residents of and/or conduct business in this district. Jurisdiction lies with this Court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, based on the claims brought under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the Fourth Amendment of the Constitution of the United States of America.

10.     Each and every act of Defendants was performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, policies, customs and usages of the United States of America, the State of Tennessee, the County of Sullivan, and the City of Kingsport, and under the authority of their positions as law enforcement officers for the City of Kingsport.

11.     All the wrongs complained of herein occurred within this jurisdiction and within the applicable statute of limitations governing this action and this Court has jurisdiction.

## III.     FACTUAL BACKGROUND

12.     As the homeless population in the City of Kingsport has grown rapidly over the last several years, the City of Kingsport has implemented policies or allowed the development of customs intended to reduce or eliminate the presence of homeless people in the downtown business district.

13.     Mr. Gillis is the director of Hunger First, a registered 501(c)(3) non-profit organization created for the purpose of attempting to relieve some of the hardships homeless persons face by providing access to food, season-appropriate clothing, and

24-hour access to a warming/cooling area where homeless persons may rest comfortably for a while.

14.    Hunger First maintains a commercially-zoned facility at 1040 East Center Street in the downtown business district of Kingsport.

15.    By virtue of Hunger First's mission, homeless persons regularly frequent the location at 1040 East Center Street to access food, clothing, and enjoy a respite from extreme weather.

16.    The policies or customs of the City of Kingsport to discourage the presence of homeless persons in the downtown business district has led to increased police encounters with homeless persons around Hunger First and with the staff and volunteers of Hunger First.

17.    Upon information and belief, the City of Kingsport has either implemented a policy or allowed the development of a custom of selectively and strictly enforcing certain building and zoning codes violations and petty violations of city ordinances, such as jay walking and littering, in and around the Hunger First facility on East Center Street.

18.    On August 20, 2020, Mr. Gillis had given two men permission to rest on the stoop of the Hunger First facility on East Center street, one of whom was an elderly Vietnam veteran.

19.    After giving the men permission to rest on the stoop at Hunger First, Mr. Gillis left to serve lunches to homeless persons at another location.

20.     When Mr. Gillis returned to the facility on East Center Street, he found police, specifically, Officer Joseph Malone, ordering the two men to vacate the premises because they were supposedly causing a fire hazard.

21.     Mr. Gillis brought his vehicle to a stop alongside a curb painted yellow, directly behind a parked police cruiser, which was also parked next to the same yellow-painted curb.

22.     Mr. Gillis activated his emergency flashers.

23.     The police cruiser's emergency light system was not activated at the time.

24.     By law, officers are bound to drive and conduct themselves in a lawful manner.

25.     There are at least two video recordings of the incident that followed, one made by a Hunger First staff member, and one from the dash camera of a police cruiser.

26.     Mr. Gillis asked the Officer Malone what was going on, as the men had his permission to be on the stoop of the Hunger First building.

27.     Officer Malone pointed out that Mr. Gillis was parked alongside a yellow curb in a no-parking zone.

28.     Officer Malone told Mr. Gillis that he had five seconds to move his car.

29.     Mr. Gillis made his way to his car to move it while talking over his shoulder to Officer Malone.

30.     Mr. Gillis asked Officer Malone, "Are you threatening me? Are you going to arrest me?"

31.      Mr. Gillis said over his shoulder, "We're going to work this out. This isn't going to happen again."

32.      As Mr. Gillis opened the door of his vehicle to get in, Officer Malone quickly made his way from the sidewalk to the driver's side door of Mr. Gillis' vehicle.

33.      Officer Malone prevented Mr. Gillis from closing his car door.

34.      Officer Malone told Mr. Gillis that he was no longer free to move his vehicle.

35.      At this point, Officer Malone had seized Mr. Gillis.

36.      Mr. Gillis had committed no crime to justify his seizure.

37.      Officer Malone began to interrogate Mr. Gillis, asking for his name and identification.

38.      Officer Malone told Mr. Gillis that this was now a criminal investigation.

39.      Mr. Gillis asked Officer Malone again why the men on the porch or stoop of the Hunger First building were being accosted by police.

40.      Officer Malone stated that the men were creating a fire hazard by their presence on the stoop.

41.      Mr. Gillis protested that the police will not allow homeless people to rest anywhere within the downtown business district.

42.      Police officers continued to move closer to Mr. Gillis' open driver's door.

43.      After approximately two minutes of conversation between Officer Malone and Mr. Gillis, Officer Malone and Officer Rambo reach into the car and pull Mr. Gillis out.

44. Just as Mr. Gillis was pulled from his car, Officer Bates pulled up in his cruiser.

45. Then Officer Bates jumped from his cruiser and ran toward Mr. Gillis.

46. As Officer Bates exits his patrol car, the audio recording is activated.

47. The radio in Officer Bates car is blaring the hard rock anthem, "T.N.T" by the 1980s Australian band, AC-DC, providing a disturbing soundtrack for the violent scene unfolding on camera in front of Officer Bates' cruiser.

48. Upon information and belief, Officer Bates was playing the loud, hard rock music either for his enjoyment as he prepared himself to interact with Mr. Gillis or for the purpose of obscuring any audio that might have been recorded by his lapel microphone.

49. Mr. Gillis was being restrained by Officer Malone and Officer Rambo, when Officer Bates ran up to Mr. Gillis, grabbed him by the hair, and forced Mr. Gillis' face into the pavement.

50. Mr. Gillis is much smaller in stature and weight than any of the individual officers who were manhandling him.

51. Mr. Gillis is only five 5'5" tall and weighs approximately 175 pounds.

52. There were four officers on Mr. Gillis.

53. Officer Bates positioned his hand on the back of Mr. Gillis' head, and used the full weight of the officer's body to push Mr. Gillis' face into the hot pavement.

54. Officer Bates then placed his knee and full body weight on Mr. Gillis' neck in the same widely publicized manner as that employed to kill George Floyd only a few months earlier.

9

55.     Mr. Gillis pleaded with the officers that he could not breathe.

56.     Officer Malone was laying prone across Mr. Gillis' back, increasing Mr. Gillis' difficulty in breathing.

57.     As a result of the brutal treatment by officers of the Kingsport Police Department, Mr. Gillis required medical treatment at Indian Path Community Hospital, Holston Medical Group, and several visits to a chiropractor.

58.     The Fourth Amendment to the United States Constitution states in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

59.     The Tennessee Constitution, Article I, § 7 states in part: "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . ."

60.     Mr. Gillis has suffered and continues to suffer physical injuries caused by the unlawful seizure and excessive force applied by officers of the Kingsport Police Department.

61.     As a result of the medical treatment required following his unlawful seizure and the excessive force applied by officers of the Kingsport Police Department, Mr. Gillis' monetary savings have been completely depleted.

62.     As a result of the unlawful seizure and excessive force applied by officers of the Kingsport Police Department, Mr. Gillis has suffered emotional and mental harm in that for a period of time he suffered anxiety and fear of the police when going about in public.

63.     As a result of the unlawful seizure and excessive force applied by officers of the Kingsport Police Department, Mr. Gillis was deprived of the value of his time while he was confined by the Kingsport Police Department.

64.     As a result of the unlawful seizure and excessive force applied by officers of the Kingsport Police Department, Mr. Gillis is entitled to reimbursement of the reasonable legal expenses he has incurred for the legal services he has been required to obtain to defend and attempt to clear himself.

## IV.     CAUSES OF ACTION AGAINST DEFENDANTS UNDER 42 U.S.C.A. § 1983

### A.     UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

65.     Plaintiff, Mr. Gillis, hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

66.     Mr. Gillis was seized by Officers Malone, Rambo and Bates and other as yet unidentified members of the Kingsport Police Department.

67.     The hands of Kingsport Police officers were laid upon Mr. Gillis and he was physically pulled from his vehicle by officers of the Kingsport Police Department, handcuffed, and transported to the Kingsport City Jail, where he was charged with disorderly conduct, failure to follow a lawful order, and resisting arrest.

68.     The only violation of law Mr. Gillis had committed was a parking violation, which does not warrant the arrest of the offender.

11

69.     Mr. Gillis was told to move his car, promptly went to do so, but was prevented from doing so by Officer Joseph Malone and other members of the Kingsport Police Department.

70.     There was no evidence or objective fact to warrant a prudent man in believing that Mr. Gillis had committed or was committing an offense that justified arrest.

71.     As a result of his unlawful seizure by officers of the Kingsport Police Department, Mr. Gillis has suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution.

72.     As a result of his unlawful seizure by officers of the Kingsport Police Department, Mr. Gillis has suffered and continues to suffer from pain and physical injuries.

73.     As a result of his unlawful seizure by officers of the Kingsport Police Department, Mr. Gillis has incurred the cost of medical care and continues to need medical care that he is unable to obtain for lack of funds.

74.     As a result of his unlawful seizure by officers of the Kingsport Police Department, Mr. Gillis has suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience such into the future.

**B.     EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

75.     Plaintiff, Mr. Gillis, hereby incorporates, in its entirety, each and every paragraph of this Complaint by reference as if fully set forth herein.

76.     The Fourth Amendment to the United States Constitution protects people from being subjected to excessive force while being arrested or detained by the police.

77.     The amount of force officers of the Kingston Police Department used during the arrest of Mr. Gillis far exceeded the amount of force a reasonable officer would have used under similar circumstances.

78.     Mr. Gillis is of small stature, being only 5'5" and 175 pounds, especially in comparison to the four or more officers who were manhandling Mr. Gillis during his arrest.

79.     There was no indication that Mr. Gillis was armed or posed a threat to officer safety or public safety in any way.

80.     Mr. Gillis was attempting to comply with the orders of Officer Joseph Malone at the time of his brutal arrest.

81.     The only crime Mr. Gillis had committed at the time of his arrest was a parking violation.

82.     There were no other persons in the vicinity who were subject to arrest.

83.     There were no other persons in the vicinity who officers had any reason to believe were armed or dangerous.

84.     Mr. Gillis was not attempting to flee, he was attempting to move his vehicle as directed by Officer Joseph Malone.

85.     Mr. Gillis did not resist arrest.

86.     The physical force applied by officers of the Kingsport Police Department resulted in unnecessary injuries to Mr. Gillis.

87.     The physical force applied to Mr. Gillis was applied intentionally by officers of the Kingsport Police Department.

88.     The physical force used against Mr. Gillis exceeded the force justified under any continuous use of force policy.

89.     The methods officers used in restraining Mr. Gillis are not standard and not condoned by reasonable police policy.

90.     The actions of the officers of the Kingston Police Department in arresting Mr. Gillis were objectively unreasonable in that excessive force was applied given the totality of the circumstances.

91.     As a result of the excessive force applied by officers of the Kingsport Police Department, Mr. Gillis has suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

92.     As a result of the excessive force applied by officers of the Kingsport Police Department, Mr. Gillis has suffered and continues to suffer from pain and physical injuries.

93.     As a result of the excessive force applied by officers of the Kingsport Police Department, Mr. Gillis has incurred the cost of medical care and continues to need medical care that he is unable to obtain for lack of funds.

94.     As a result of the excessive force applied by officers of the Kingsport Police Department, Mr. Gillis has suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience such into the future.

**C.     THE CITY OF KINGSPORT'S POLICY INADEQUATE TRAINING AND INADEQUATE SUPERVISION OF POLICE OFFICERS CAUSED THE VIOLATION OF MR. GILLIS' CONSTITUTIONAL RIGHTS**

95.     Plaintiff, Mr. Gillis, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

96.     The City of Kingsport has a duty to adequately train and supervise its police officers in order to protect the rights of the persons with whom those officers interact.

97.     The City of Kingsport has a duty to adequately train and supervise police officers do not unlawfully seize nor use excessive force on the persons with whom they interact.

98.     The City of Kingsport has, or had at the time of Mr. Gillis' Fourth Amendment rights were violated, policies which failed to adequately train and supervise officers regarding unlawful seizure and the use of excessive force.

15

99. The City of Kingsport's failure to adequately train and supervise police officers amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the Fourth Amendment right to freedom from unlawful seizure and the use of excessive force.

100. At the time of Mr. Gillis' unlawful seizure and brutal treatment, Kingsport police officers placed a knee on Mr. Gillis' neck and head in the same manner which caused the highly-publicized death of George Floyd months earlier, clearly demonstrating the city's deliberate indifference to the likelihood of civil rights violations.

101. The failure of the City of Kingsport to adequately train and supervise police officers proximately caused the violation of Mr. Gillis' well-established right to freedom from unlawful seizure and the use of excessive force under the Fourth Amendment.

102. Policymakers for the City of Kingsport knew that police officers would encounter situations where they must decide whether to seize a person and the level of force that is appropriate while making seizures of persons.

103. The inability of officers to make appropriate decisions about whether to seize a person and the proper level of force to use when making such a seizure will certainly lead to the violation of rights under the Fourth Amendment

104. As a result of the City of Kingsport's deliberate indifference, Mr. Gillis' Fourth Amendment right to freedom from unlawful seizure and the use of excessive force was violated.

16

105.    As a result of the City of Kingsport's deliberate indifference, Mr. Gillis suffered damages.

**D.    THE CITY OF KINGSPORT'S POLICY OR CUSTOM OF ELIMINATING HOMELESS PERSONS FROM THE DOWNTOWN BUSINESS DISTRICT WAS THE CAUSE OF AND THE MOVING FORCE BEHIND THE VIOLATION OF MR. GILLIS' CONSTITUTIONAL RIGHTS**

106.    Plaintiff, Mr. Gillis, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

107.    The City of Kingsport has adopted an official policy of eliminating the presence of homeless persons from the downtown business district by encouraging increased and aggressive police interactions.

108.    In the alternative, the City of Kingsport has encouraged the development of a custom of eliminating the presence of homeless persons from the downtown business district through increased and aggressive police interactions.

109.    If not an official policy of the City of Kingsport, the custom of eliminating the presence of homeless persons from the downtown business district has become so well-settled and permanent as to have the force of law.

110.    Mr. Gillis is the director of Hunger First, a non-profit organization with the stated mission of providing food, clothing, and temporary shelter for homeless persons.

111.    Hunger First's primary location is at 1040 East Center Street, which is located within the downtown business district of Kingsport, Tennessee.

17

112.    The ever-increasing number of homeless persons in Kingsport, Tennessee, and the stated mission of Hunger First to provide food, clothing, and temporary shelter to the homeless population, leads to the constant presence of homeless persons around the Hunger First facility on East Center Street.

113.    Because of the City of Kingsport's policy, or, in the alternative, custom, of eliminating homeless persons from the downtown business district, there have been ever increasing police interactions with homeless persons and staff and volunteers working on behalf of Hunger First.

114.    The police interactions with homeless persons and staff and volunteers associated with Hunger First have become increasingly aggressive, including building and zoning codes enforcement and persecution of minor infractions such as jay walking and littering.

115.    If it is not an official policy of the City of Kingsport to encourage these aggressive police encounters with homeless persons, staff, and volunteers associated with the East Center Street location of Hunger First, the City of Kingsport has allowed this pattern of aggressive police encounters to continue and has demonstrated municipal acquiescence to the custom.

116.    Statements made by the board of mayor and aldermen of the City of Kingsport both in and out of official session demonstrate their knowledge of Kingsport's policy or, in the alternative, custom, to eliminate the presence of homeless persons from the downtown business district through increasingly aggressive police interactions.

117.    It was reasonably foreseeable that the policy or custom of the City of Kingsport to eliminate the presence of homeless persons from the downtown business district through increasingly aggressive police interactions with homeless persons and staff and volunteers associated with Hunger First would lead to the violation of someone's constitutional rights, or in other words, the City of Kingston's policy or custom was the proximate cause of the violation of Mr. Gillis' Fourth Amendment rights to freedom from unlawful seizure and freedom from the use of excessive force during his arrest.

118.    As a result of the City of Kingsport's policy or custom of eliminating the presence of homeless persons from the downtown business district through the use of increasingly aggressive police interactions with homeless persons and staff and volunteers associated with Hunger First, Mr. Gillis suffered damages including the violation of his constitutional rights to freedom from unlawful seizure and freedom from the use of excessive force during his arrest.

119.    As a result of the City of Kingsport's policy or custom, Mr. Gillis has suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

120.    As a result of the City of Kingsport's policy or custom, Mr. Gillis has suffered and continues to suffer from pain and physical injuries.

121.    As a result of the City of Kingsport's policy or custom, Mr. Gillis has incurred the cost of medical care and continues to need medical care that he is unable to obtain for lack of funds.

122.     As a result of the City of Kingsport's policy or custom, Mr. Gillis has suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience such into the future.

## V.     DAMAGES

123.     As a result of the aforementioned acts and omissions in violation of Mr. Gillis' well-established rights under the Fourth Amendment to the United States Constitution and the Tennessee Constitution, the same being a direct and proximate cause of Mr. Gillis' injuries and damages, Mr. Gillis seeks recovery from the Defendants in the amount of not less than One Million Dollars ($1,000,000.00) for damages, including, but not limited to, the following:

  a.  Physical pain and suffering;

  b.  Emotional pain and suffering;

  c.  Actual and future medical expenses;

  d.  Loss of enjoyment of life;

  e.  Loss of wages and earning capacity;

  f.  Attorney fees;

  g.  Punitive damages;

  h.  All such further relief, general and specific, to which Mr. Gillis may be entitled under the facts and circumstances herein.

124.     As a direct and proximate results of the aforementioned acts and/or omissions of Defendants, Mr. Gillis has been injured.

## VI.     PRAYERS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED:

Mr. Gillis sues Defendants, jointly and severally, individually and in their official

capacity, and prays for a judgment against the Defendants for nominal, compensatory,

and punitive damages in the maximum amount allowed by law and for such further

general and specific damages, statutory and discretionary costs, post-judgment interest,

and such further relief as the Court may find Mr. Gillis to be entitled.

Respectfully submitted this 19th day of August, 2021.


_____/s/ Nathaniel H. Evans_____
NATHANIEL H. EVANS (BPR # 026292)
THE EVANS LAW FIRM
625 Market Street, Suite 404
Knoxville, Tennessee 37902
(865) 523-2755
nate@evanslawfirm.law

21